UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PATRICIA DOYLE**, | ) |
| Plaintiff, | ) CIVIL ACTION |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| **GENERAL BUILDING MAINTENANCE, INC.** | ) |
| Defendant. | ) |

# COMPLAINT

COMES NOW Plaintiff, Patricia Doyle, and for her Complaint against General Building Maintenance, Inc. states as follows:

NATURE OF ACTION

1. This is an action arising out of Plaintiff's employment with General Building Maintenance, Inc. Plaintiff seeks to redress discrimination based on her sex (female) and age, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq* ("ADEA").

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(c)(1).

3. Venue is proper in this Court under 28 U.S.C. § 1391 because this is a judicial district in which the Defendant resides, and this is the district in which a substantial part of the events and omissions giving rise to the claim occurred. Venue also is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because this is the district in which the unlawful employment practices occurred and where the employment records relevant to such practices are maintained.

4. Plaintiff timely filed a charge of discrimination based on her sex (female) and age, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a Notice of Right to Sue, and this suit is filed within ninety (90) days of receipt of that notice.

## PARTIES

5. Plaintiff, Patricia Doyle, is a 65-year-old female, who was employed by General Building Maintenance, Inc. at its Atlanta, Georgia corporate headquarters.

6. Defendant, General Building Maintenance, Inc., is a Georgia for-profit corporation, headquartered and with its registered agent at 3835 Presidential Parkway, Suite 200, Atlanta, DeKalb County, Georgia. Defendant is an employer as that term is defined in Title VII, 42 U.S.C. § 2000e(b) and the ADEA, 29 U.S.C. § 630(b).

FACTS

**PLAINTIFF'S SUCCESSFUL EMPLOYMENT WITH DEFENDANT**

7. Defendant General Building Maintenance, Inc., ("Defendant") is a company providing comprehensive janitorial services to its customers in several states including Georgia.

8. Plaintiff was employed as an area manager for Defendant on July 11, 2018. She was promoted to General Manager during September 2019 and served successfully in that position until her discharge on May 21, 2020.

9. Throughout her employment, Plaintiff was a committed employee. During 2019 she performed three separate jobs simultaneously for a period of six months: General Manager of Atlanta; Area Manager; and Quality Assurance Manager. During this period Plaintiff often worked as much as sixteen (16) hours a day in order to accomplish duties.

10. Throughout the first year of Plaintiff's employment, she experienced positive relationships at work. Although Plaintiff received no written performance appraisals, on many occasions she was advised that her job performance was outstanding and commended for her contribution to the success of Defendant in obtaining new customers and servicing current customers, including Zoo Atlanta.

**DISCRIMINATION AGAINST PLAINTIFF BASED ON HER SEX AND AGE AFTER THE HIRING OF DONALD CHAMPION AS SENIOR VICE PRESIDENT**

11. Donald Champion ("Champion"), a younger male, was hired as Senior Vice President on or about August 1, 2019.

12. Upon his arrival and culminating in Plaintiff's discharge during May 2020, Champion treated Plaintiff differently than male employees and made derogatory comments to Plaintiff about female and older employees and based on her gender and age.

13. On or about late September 2019, Champion did not allow Plaintiff to perform one of her job responsibilities of seeking a new cleaning subcontractor for a building serviced by Defendant, substituting two men, Mike Mora and himself, to deal with the task. Champion told Plaintiff that she should not be involved and should "let the men handle it."

4

14. On or about March 2020 Champion refused to allow Plaintiff, consistent with her job responsibilities, to interview a candidate for a position reporting to Plaintiff, instead interviewing the candidate himself.

15. When Plaintiff objected that the interview had been conducted without her involvement, Champion responded that "it was time to restructure the Atlanta Branch and bring on some younger talent."

16. On April 12, 2020, Plaintiff approached Champion urging that they should seek to improve their relationship. Champion responded that "nothing can be done" and yelled at Plaintiff, stating that she was mentally disturbed.

17. During the April 12, 2020, conversation, Champion told Plaintiff that she was a liar and that "it was time for her to retire from the business." Upon departing the area, Champion ended the conversation by telling Plaintiff, loudly enough that other employees heard it, "You are a stupid bitch."

18. Champion on multiple occasions stated to Plaintiff and to other of Defendant's employees that he believed the cleaning business is a man's world.

19. On information and belief, Defendant received complaints that Champion discriminated against female and older employees.

## CHAMPION'S CAMPAIGN TO EFFECTUATE PLAINTIFF'S PRETEXTUAL DISCHARGE

20. Champion, Defendant's Senior Vice President, commenced a campaign to discharge Plaintiff based on her gender and age by treating her differently than male and younger employees.

21. The campaign included Champion discrediting Plaintiff with Defendant's management, employees, contractors, and customers so as to diminish her ability as a leader and manager, including as follows.

22. On multiple occasions, Champion contacted male employees, subordinates, and customers of Plaintiff, and excluded Plaintiff from communications and activity required to accomplish her job responsibilities, all of which was intended to interfere and did interfere with Plaintiff performing her job duties.

23. Champion instructed employees that reported to Plaintiff that they should not listen to what she said and should not follow her directions regarding job assignments.

24. Champion frequently made false accusations against Plaintiff to Defendant's employees and customers in order to demean her capabilities and diminish her reputation.

25. Champion yelled at Plaintiff on the job in front of other employees, an action that never occurred with male employees. Such conduct by Champion undermined Plaintiff and interfered with her ability to lead employees.

26. Champion arranged appointments for Plaintiff without informing her or gaining her assent, so as to create scheduling issues and raise Plaintiff's anxiety as she sought to complete conflicting tasks and assignments.

27. Although selecting and managing contractors for cleaning services was a duty of Plaintiff, Champion made changes in subcontractors working for Plaintiff without any notification to her.

28. Champion texted Defendant's assigned manager at its customer, Zoo Atlanta, to inform her that she did not report to Plaintiff and that the manager should take job instructions only from Champion, which was contrary to Plaintiff's job duties and responsibilities.

29. During Plaintiff's final months of employment, Plaintiff was intentionally excluded from meetings with clients, customers and opportunities that affected her

daily duties and negatively impacted an incentive compensation benefit provided for in her employment agreement with Defendant.

30. During April and May 2020, Champion engaged in unrelenting harassment of Plaintiff with emails and questioning her work schedule that prevented Plaintiff from accomplishing work tasks.

31. Champion issued a written warning to Plaintiff on May 14, 2020 alleging that she did not answer his text messages, a fabricated, groundless effort to pave the way for Plaintiff's unlawful discharge.

32. During May 2020, Champion telephoned a manager at Zoo Atlanta falsely stating to her that Plaintiff was a terrible manager and ruining the Atlanta market for Defendant.

33. In furtherance of his scheme to discharge Plaintiff, Champion fabricated unwarranted complaints against Plaintiff that were communicated to Defendant's management, employees, and customers.

**PLAINTIFF REPORTED THE GENDER AND AGE DISCRIMINATION TO DEFENDANT'S REPRESENTATIVES**

34. On numerous occasions, Plaintiff complained that she was treated differently than male employees and reported Champion's derogatory remarks based

on her gender and age and his stated preference for male and younger employees. Defendant failed and/or inadequately responded to the complaints, therefore allowing discrimination by Champion to continue unabated and culminate in Plaintiff's discriminatory and retaliatory discharge.

35   On or about September 23, 2019, Plaintiff reported to Human Resources ("HR") Manager Tammy Scott that Champion had removed Plaintiff from her management responsibilities at the ABB plant in Athens, GA and that Champion had instructed her "to just let the men handle the situation."

36.   On or about December 1, 2019, Plaintiff reported to Defendant's President Joe Woodson and HR Manager Scott that Champion persisted in berating and yelling at her in front of other employees.

37.   During early 2020 Plaintiff attended several meetings with Mr. Woodson and Ms. Scott where she reported and objected regarding the discriminatory treatment of her by Champion.

38.   On or about March 1, 2020, Plaintiff reported to Mr. Woodson the conversation where Champion stated that he needed to restructure the Atlanta branch and bring on some younger talent.

39. On or about April 6, 2020, Plaintiff informed Mr. Woodson and Ms. Scott regarding Champion's statements that he wanted to obtain a younger workforce in Atlanta and that he often had indicated a strong preference for working with men and eliminating women from leadership roles.

40. On or about May 6, 2020, Plaintiff reported to Mr. Woodson that for a prolonged period Champion was undermining Plaintiff in her responsibility of managing Defendant's contract to provide cleaning services at Zoo Atlanta. On information and belief, Woodson telephoned Zoo Atlanta officials and falsely stated that the problems they were experiencing were caused by Plaintiff.

41. On May 14, 2020, Plaintiff met with Champion, Defendant's President Joe Woodson, and Human Resources Director Tammy Scott. During this meeting Plaintiff reiterated that she had raised numerous complaints regarding the discriminatory treatment and the hostile environment created by Champion.

**DEENDANT DISCHARGED PLAINTIFF FOR REASONS THAT WERE SUBJECTIVE, SHIFTING AND A PRETEXT FOR GENDER AND AGE DISCRIMINATION AND IN RETALIATION FOR REPORTING GENDER AND AGE DISCRIMINATION BY CHAMPION**

42. Plaintiff was discharged by Defendant's President Joe Woodson on May 21, 2020, seven (7) days after the meeting in which she reiterated her complaints of

discriminatory treatment by Champion, and without any specific reason that justified her termination. Woodson merely stated to Plaintiff the subjective reason that, "we are going to have to let you go."

43. Following Plaintiff's discharge, Defendant notified the Georgia Department of Labor that Plaintiff was terminated due to a loss of business.

44. The discharge of Plaintiff was the culmination of a deliberate effort by Champion to fabricate incidents that cast a negative light on Plaintiff -- a successful, productive older, female manager who had a spotless employment record until Champion instigated the scheme to get rid of Plaintiff for discriminatory reasons.

45. Plaintiff was discharged for reasons that were subjective, shifting, false, contrived and a pretext to discharge her based on her sex and age, and in retaliation for complaining of sex and age discrimination.

46. Because of Champion's zeal to terminate Plaintiff, she was discharged without Defendant adhering to the progressive discipline that called for meetings, written reports, and conferences that would provide her an opportunity to correct alleged shortcomings as spelled out in the Disciplinary Procedures provision in Defendant's Employee Handbook, a process provided to other employees.

47. On information and belief, Plaintiff has been replaced with persons outside her protected class.

48. As a result of the discrimination and retaliation, Plaintiff has suffered and continues to suffer from severe emotional pain and suffering, mental anguish, and a loss of enjoyment of life.

49. Defendant acted willfully and with malice and/or reckless indifference to Plaintiff's federally protected rights.

## CAUSES OF ACTION

### COUNT I – Discrimination in Violation of Title VII

50. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 49 of this Complaint.

51. Defendant discriminated against Plaintiff because of her sex, female, by engaging in a campaign to discharge Plaintiff and discharging Plaintiff for reasons that were false, contrived and a pretext to discharge her based on her sex.

52. Defendant is liable for to Plaintiff for sex discrimination in violation of Title VII.

## COUNT II – Age Discrimination in Violation of ADEA

53. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 49 of this Complaint.

54. Defendant discriminated against Plaintiff because of her age by engaging in a campaign to discharge Plaintiff and discharging Plaintiff for reasons that were false, contrived and a pretext to discharge her based on her age.

55. Defendant is liable for to Plaintiff for age discrimination in violation of ADEA.

## COUNT III (Retaliation in Violation of Title VII and ADEA)

56. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 49 of this Complaint.

57. Plaintiff repeatedly complained that Defendant's executive Champion treated her less favorably than male employees, of his derogatory remarks based on her gender and age, and his expressed preference for male and younger employees.

58. The discharge of Plaintiff was unjustified and done in retaliation for her complaints of sex and age discrimination.

59. Defendant is liable for to Plaintiff for retaliation in violation of Title VII and ADEA.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court:

a. Declare that the acts and practices complained of herein are in violation of Title VII and ADEA;

b. Enjoin Defendant from engaging in such conduct in the future;

c. Direct Defendant to make Plaintiff whole for all earnings, including fringe benefits, Plaintiff would have received but for the discriminatory treatment of her;

d. Direct Defendant to reinstate Plaintiff;

e. Award to Plaintiff and against Defendant compensatory and punitive damages under Title VII;

f. Award Plaintiff liquidated damages under the ADEA;

g. Award Plaintiff her costs and attorneys' fees, and pre- and post-judgment interest; and

h. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted,

s/A. McArthur Irvin
A. McArthur Irvin
Georgia Bar No. 384300
mirvin@ibhslaw.com
404.237.5075

/s Sandra Kaye Bowen
Georgia Bar No. 409315
sbowen@ibhslaw.com
404.237.1033

IRVIN BOWEN LLC
1100 Peachtree Street, N.E.
Suite 900
Atlanta, Georgia 30309
404.237.6100
404.237.1047 (fax)

Attorneys for Plaintiff